UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

TRELLIS QUINN,

                    Plaintiff,

    v.

JULIO CALDERIN, *et al.*,

                    Defendants.

Case No. 2:19-cv-00442-MMD-DJA

ORDER

## I.  SUMMARY

*Pro se* Plaintiff Trellis Quinn, who is currently incarcerated at South Desert Correctional Center ("SDCC"), brings this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 6.) After screening Quinn's complaint pursuant to 28 U.S.C. § 1915A, the Court dismissed five named defendants, but allowed claims to proceed against the remaining ten defendants. (ECF No. 5.) Before the Court is Defendants partial motion to dismiss.[1] (ECF No. 19 ("Motion").) As further explained below, the Court will grant the Motion in part, and will deny it in part.

## II.  BACKGROUND

The following allegations are adapted from the Complaint. Quinn sues multiple defendants for events that took place while he was incarcerated at High Desert State Prison ("HDSP"). After screening, the remaining Defendants in this case are institutional chaplain Julio Calderin; HDSP Warden Brian Williams; Associate HDSP Warden Jennifer Nash; former Nevada Department of Corrections Director James Dzurenda; HDSP correctional officers Jesus Leavitt, Bruce Martin, James Sutton, and Arnold Tombs; and

---

[1]Quinn did not respond to the Motion. Because of Quinn's *pro se* status, the Court determines it is proper to evaluate the Motion on its merits despite Quinn's failure to respond.

HDSP caseworkers Teddy Miro and Dean Whirley. For these claims, Quinn seeks monetary and injunctive relief.

## A. First Amendment and RLUIPA Claims

Quinn alleges that Defendants violated his right to free exercise of religion under the First Amendment and violated the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") because he was denied permission to attend Jumah services until December 7, 2018, without any basis for the denial. (ECF No. 6 at 7.) Quinn alleges that he is a devout Muslim and that Jumah services are essential to his religious practice. (*Id.* at 4.) Specifically, Quinn alleges that Defendants Calderin, Dzurenda, Nash, and Williams each participated in denying him permission to attend Jumah services. (*Id.* at 7.)

The Court permitted Quinn's First Amendment free exercise and RLUIPA claims to proceed against Defendants Calderin, Dzurenda, Nash, and Williams. (ECF No. 5 at 5.)

## B. Retaliation, Deliberate Indifference, Conditions of Confinement

Quinn also alleges a First Amendment retaliation claim and Eighth Amendment claims for unacceptable conditions of confinement and deliberate indifference to a serious medical need. (ECF No. 6 at 5-9.) On November 11, 2018, Quinn slipped on a staircase and claims to have fractured his ankle. (*Id.* at 5.) Quinn alleges his shoes were wet because water from a leaky water fountain leaked onto the floor. (*Id.*) Quinn alleges that Defendants Leavitt, Martin, Miro, Sutton, and Tombs knew about the leaking fountain for several months but refused to do anything about it. (*Id.* at 8.) Quinn further alleges that even though Defendants Dzurenda, Leavitt, Martin, Miro, Sutton, Tombs, and Whirley knew that he would not be able to pick up his meds or go to the dining hall, they refused to order that his meds and food be brought to him. (*Id.* at 7.) As a result, Quinn alleges he did not eat for three days. (*Id.*) Quinn also argues that because no one performed an x-ray, his ankle is healing improperly. (*Id.* at 9.) Quinn alleges that Defendants acted out of retaliation because he filed an emergency medical grievance for his foot injury on November 11. (*Id.* at 7.)

2

## III.    LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See id*. at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id*. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See id*. at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id*. at 678. Where the complaint does not permit the Court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id*. at 679 (alteration in original) (internal quotation marks and citation omitted). That is insufficient. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

Although the standard for screening an *in forma pauperis* complaint under 28 U.S.C. § 1915A is the same as the standard used for a dismissal for failure to state a

3

claim under Federal Rule of Civil Procedure 12(b)(6), district courts may consider the issues again with the benefits of defendants' briefing. *See Hernandez v. Aranas*, 2020 WL 569347, at *3 (D. Nev. Feb. 4, 2020).

## IV.   DISCUSSION

Defendants now move to partially dismiss the Complaint. First, Defendants argue that monetary damages are unavailable against Defendants in their official capacities under 42 U.S.C. § 1983. Defendants also assert that Quinn's RLUIPA claim is moot. Next, Defendants argue that the Court should dismiss Quinn's First Amendment retaliation claim because there are no allegations Defendants' conduct was "substantially" motivated by Quinn's protected conduct. Finally, Defendants argue the Court should also dismiss Quinn's deliberate indifference to a serious medical need claim because there is no evidence Defendants had notice of his injury yet failed to respond.

The Court will address each argument in turn.

### A.   Monetary Damages

Defendants first argue that Quinn may not seek monetary damages against Defendants in their official capacities. (ECF No. 19 at 5.) Defendants do not make any qualified immunity arguments. The Court agrees that "state officials sued in their official capacities cannot be liable for monetary damages because they are not 'persons' under § 1983." *Rexroad v. Nevin*, Case No. 2:17-cv-01629-JCM-NJK, 2019 WL 1645984, at *3 (D. Nev. Apr. 16, 2019). However, prisoners may seek monetary damages against government officials in their individual capacity "for an allegedly unlawful official action" if a reasonable official "would understand that what he is doing violates [a clearly established] right." *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987).

Quinn may not be awarded damages for his § 1983 claims against Defendants in their official capacities, but he may still seek to prove that each Defendant is individually liable. Accordingly, the Court rejects Defendants' dismissal argument as to monetary damages.

///

4

**B.    RLUIPA**

Defendants next argue that the Court should dismiss Quinn's RLUIPA claim as moot. Quinn alleges that Defendants Calderin, Dzurenda, Nash, and Williams denied him access to Jumah services over his repeated requests for over two years. (ECF No. 6 at 4-7.) Defendants first argue that in 2018, Quinn has had access to Jumah services since 2018, so the HDSP and NDOC officials have voluntarily ceased any offending conduct. (ECF No. 19 at 5-6.) Defendants also argue that because Quinn has been transferred to SDCC, there is no prospective harm that injunctive relief could cure. (*Id.*) The Court agrees that Quinn has not alleged a continuing harm that injunctive relief could remedied, but will grant Quinn leave to amend to supplement his Complaint if he has a reasonable expectation the offending conduct could occur.

When institutional defendants voluntarily change an allegedly infringing policy, an inmate's RLUIPA claims are generally mooted. *See Maloney v. Ryan*, 711 F. App'x 372, 373 (9th Cir. 2017). However, while the Court agrees that Defendants appear to have voluntarily permitted Quinn to attend Jumah services, the offending conduct in this instance does not appear to have been a part of a policy that NDOC or HDSP changed. Rather, Quinn appears to allege that Defendants' actions were not justified by any policy and were instead done without any basis. "We presume that a government entity is acting in good faith when it changes its policy, but when the Government asserts mootness based on such a change it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014). Because Defendants are effectively unrestrained from deciding to again prevent Quinn from accessing Jumah services, the Court will not moot the RLUIPA claim on this ground. *See id.* at 971-72.

Instead, the Court will consider whether Quinn has alleged he has a reasonable expectation that his access to Jumah services will again be restricted. Typically, an inmate's release from custody moots an RLUIPA claim. *See Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). Because the plaintiff "has been removed from the environment

in which he was subjected to the alleged RLUIPA violations . . . any injunctive relief ordered in [his] favor would have no practical impact on his rights and would not redress in any way the injury he originally asserted." *Id.* However, when an inmate has not been released but has merely been transferred, his injunctive claims are not necessarily moot. *See Walker v.* Beard, 789 F.3d 1125, 1131-32 (9th Cir. 2015) (reasoning that whether an inmate's claim for injunctive relief is moot depends on whether there was a reasonable expectation he would be subject to the offending conduct again); *see also Friedman v. Aranas*, Case No. 3:17-cv-00433-MMD-WGC, 2019 WL 7597663, at *7 (D. Nev. Dec. 27, 2019) (declining to extend the reasoning in *Jones* to a case where a prisoner had been transferred but not released from custody). RLUIPA claims have not survived an inmate's transfer to a new facility when the inmate fails to demonstrate there was a reasonable expectation the offending conduct would recur. *See, e.g.*, *Harris v. Escamilla*, 736 F. App'x 618 (9th Cir. 2018) (finding a transferred inmate's RLUIPA claim was moot because he did not allege "any statewide policy impacting religious activities that would affect him at the new facility"); *Jackson v. Sullivan*, 692 F. App'x 437, 439-40 (9th Cir. 2017) (finding a transferred inmate's RLUIPA claims moot when he had not alleged any adverse consequences at his new facility and that the offending conduct was unlikely to continue even if he were to be transferred back).

Quinn has not alleged that he is likely to return to HDSP or that the Defendants' refusal to allow him access to Jumah services was part of a system-wide policy. In fact, he alleges the opposite—that there was no reason to deny him access to the Jumah services. Because Quinn has not argued the offending conduct is likely to recur, the Court will dismiss his RLUIPA claim as moot. However, the Court will grant Quinn leave to amend to add any allegation that he has a reasonable expectation he may be excluded from Jumah services in the future.

### C.    First Amendment Retaliation

Defendants argue the Court should dismiss Quinn's retaliation claim because he fails to allege that any Defendant had notice of his injury; consequently, Defendants argue

there is no causal connection between Quinn's emergency medical grievance and the alleged adverse action. (ECF No. 19 at 6.) An inmate alleging retaliation must show "(1) a state actor took some adverse action . . . (2) because of (3) [the] prisoner's protected conduct, . . . that such action (4) chilled [his] exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)). In their Motion, Defendants argue only that Quinn has not satisfactorily pleaded a set of facts that would support the second element.

The Court agrees that a causal connection must exist between Quinn's protected conduct and an adverse action to ultimately sustain a claim for retaliation. *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). However, "[b]ecause direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Quinn argues that Defendants Dzurenda, Leavitt, Martin, Miro, Sutton, Tombs, and Williams all knew his ankle was injured but refused to bring him food or medication in his cell because he filed a grievance complaining of lack of proper medical care, and that as a result he was unable to eat for three days. (ECF No. 6 at 8-9.) Under *Watison*, Quinn may infer a causal connection from the chronology of these events—he filed his emergency medical grievance on November 11 and alleged suffered the retaliatory consequences for that action for the next three days. (*Id.*) While courts have found that inmates' retaliation claims against wardens for actions of their subordinates require some allegations of either "personal involvement" or other specific knowledge, it is unreasonable to require Quinn at the pleading stage to prove that each Defendant had actual knowledge of his injury and the grievance he filed. *See, e.g.*, *Thomas v. Solano*, Case No. CV 18-8707-CAS (JEM), 2021 WL 1556540, at *10 (C.D. Cal. Jan. 29, 2021) (citing *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012)). Quinn lists each Defendant's name and alleges that they became aware of his injury on November 11 "because Plaintiff notified them all." While it may be the case that Quinn will

1   not be able to support this allegation with evidence, his allegation is sufficient at the

2   pleading stage.

3       Accordingly, the Court will deny the Motion as to Quinn's First Amendment

4   retaliation claim.

### D.    Deliberate Indifference to a Serious Medical Need

6       Defendants also argue the Court should dismiss Quinn's Eighth Amendment claim

7   alleging that Defendants Dzurenda and Williams were deliberately indifferent to a serious

8   medical need. (ECF No. 19 at 7-8.) Defendants again argue that Quinn has not sufficiently

9   alleged Defendants Dzurenda or Williams had any knowledge about Quinn's ankle injury.

10  (*Id.* at 8.) To show a prison official was deliberately indifferent, the plaintiff must prove the

11  official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v.*

12  *Brennan*, 511 U.S. 825, 837 (1994). The official must be aware of the facts from which

13  they could infer that a substantial risk of serious harm exists, and the official must actually

14  draw the inference. *Id.*

15      Although Quinn will ultimately need to establish that Defendants were "aware of

16  facts from which the inference could be drawn that a substantial risk of serious harm

17  exists," the facts Quinn pleaded in his Complaint are sufficient at this stage. Quinn states

18  that he called a "man-down" and was issued crutches on the day of the incident. (ECF

19  No. 6 at 5.) He further states that he filed an emergency medical grievance (*id.*), and that

20  he informed his nurse, Dzurenda, and Williams that he needed an x-ray for a suspected

21  fracture, but never received one (*id.* at 9). Taking these allegations as true, construing the

22  Complaint liberally because Quinn is *pro se*, and considering the facts in the light most

23  favorable to Quinn, the Court will deny the Motion as to Quinn's deliberate indifference to

24  a serious medical need claim.

### E.    Leave to Amend

26      The Court has discretion to grant leave to amend and should freely do so "when

27  justice so requires." Fed. R. Civ. P. 15(a); *see also Allen v. City of Beverly Hills*, 911 F.2d

28  367, 373 (9th Cir. 1990). Nonetheless, the Court may deny leave to amend if it will cause:

1  (1) undue delay; (2) undue prejudice to the opposing party; (3) the request is made in bad

2  faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would

3  be futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

4  As stated above, the Court will grant Quinn leave to amend his RLUIPA claim.

5  Because the case is in the relatively early stages, the Court finds there is little risk of

6  undue delay or prejudice to Defendants. If Quinn can state a reasonable expectation that

7  he will again be denied access to Jumah services, he is given leave to supplement his

8  Complaint.

9  **V.    CONCLUSION**

10  The Court notes that the parties made several arguments and cited to several

11  cases not discussed above. The Court has reviewed these arguments and cases and

12  determines that they do not warrant discussion as they do not affect the outcome of the

13  motions before the Court.

14  It is therefore ordered that Defendants' partial motion to dismiss (ECF No. 19) is

15  granted in part and denied in part as specified herein.

16  It is further ordered that if Quinn wishes to amend his RLUIPA claim, he must file

17  an amended complaint within 30 days from the date of entry of this order.

18  The Clerk of Court is directed to send Quinn the approved form for filing a § 1983

19  complaint, instructions for the same, and a copy of his original complaint (ECF No. 6). If

20  Quinn chooses to file an amended complaint, he must use the approved form and he

21  must write the words "First Amended" above the words "Civil Rights Complaint" in the

22  caption. Any amended complaint will be considered the operative complaint in this case,

23  so Quinn must include every allegation from his original screened complaint (ECF No. 6)

24  that was allowed to proceed.

25  ///

26  ///

27  ///

28  ///

It is further ordered that if Quinn does not file an amended complaint within 30 days of the date of this order, this action shall proceed on the original complaint (ECF No. 6), the Court's original screening order dated December 23, 2019 (ECF No. 5), and without the RLUIPA claim as specified herein.

DATED THIS 24th Day of June 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE